UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
INTEGRA FX3X FUND, L.P., and INTEGRA   :
INVESTMENT MANAGEMENT, L.P.,          :
                                   :
                    Plaintiffs,     :         14-CV-8400 (JPO)
                                   :
          -v-                 :      OPINION AND ORDER
                                   :
DEUTSCHE BANK, AG,              :
                                   :
                  Defendant.     :
----------------------------------------------------------X

J. PAUL OETKEN, District Judge:

Plaintiffs Integra FX3X Fund, L.P., and Integra Investment Management, L.P., (collectively, "Integra") filed this contract and tort action on October 21, 2014.  (Dkt. No. 1.) Defendant Deutsche Bank, AG, moved to dismiss on May 5, 2015.  (Dkt. No. 13.)  For the reasons that follow, Deutsche Bank's motion is granted.

## I.     Factual Allegations

For the purposes of this motion, the Court assumes as true the facts alleged in the Complaint.  *See Profeta v. Shandell, Blitz, Blitz, & Ashley, LLP*, No. 15-CV-1054, 2015 WL 7288651, at *1 (S.D.N.Y. Nov. 16, 2015) (Oetken, J.).

This case arises under the Court's diversity jurisdiction.  All partners of the Plaintiff limited partnerships are citizens of Florida or Florida business entities organized in and having their principal places of business in Florida.  (Dkt. No. 29.)  Defendant is a citizen of Germany, and the matter in controversy exceeds $75,000.  (*Id.*)  *See* 28 U.S.C. § 1332.

Richard Scalone founded Integra Investment Management, L.P. ("Integra Investment"), a Florida limited liability partnership investing in foreign exchange derivatives, in 1999.  (Dkt. No.

1 ¶¶ 5, 8-9).  From 2000 until January 2008, Integra Investment used UBS as its prime broker for its various funds, though it also signed a prime brokerage agreement with Deutsche Bank in 2002.  (*Id.* ¶¶ 18, 21-24.)  In or around January 2008, after determining that Deutsche Bank calculated margin collateral requirements using the same method as UBS, Integra Investment transferred all its open positions to Deutsche Bank and began using Deutsche Bank as its prime broker.  (*Id.* ¶¶ 27-28.)

Shortly thereafter, Deutsche Bank informed Integra Investment that Deutsche Bank was changing its margin calculation system.  (*Id.* ¶ 29.)  Deutsche Bank informed Integra Investment that the change would not have a material impact on the calculation of margin requirements, but the new methodology immediately indicated that one of Integra Investment's funds—Kragga— had a collateral shortfall.  (*Id.* ¶¶ 29-31.)  Deutsche Bank's representatives "acknowledged there was a problem with the new margin calculation system and that the information . . . was erroneous."  (*Id.* ¶ 32.)  They also orally agreed not to enforce any margin calls on Kragga resulting from the errors.  During 2008, Deutsche Bank and Integra Investment would occasionally discuss the problem.  (*Id.* ¶¶ 33-37.)  Deutsche Bank's representatives "repeatedly assured" Integra Investment that Deutsche Bank would not enforce margin calls based on the erroneous methodology.  (*Id.* ¶ 35.)  Deutsche Bank made only one margin call at that time, despite Deutsche Bank's data showing a collateral shortfall on at least 42 occasions.  (*Id.* ¶¶ 38- 45.)  Integra Investment met that margin call on August 29, rather than "spend[ing] too much time focusing on what Integra considered a minor and erroneous call."  (*Id.* ¶ 43.)

Around August 15, 2008, Integra Investment established Integra FX3X Fund, L.P. ("FX3X").  (*Id.* ¶ 47.)  FX3X then entered into an ISDA Master Agreement ("ISDA") and ISDA Credit Support Annex ("CSA") in late September 2008.  (*Id.* ¶¶ 48.)  The CSA permits Deutsche

Bank to "change the methodology used to calculate the Net Open Position"—from which collateral shortfalls are determined—"at any time." (Dkt. No. 15-1 ¶ 13(x).) The contract specifies, however, that the methodology "shall be [Deutsche Bank's] normal methodology applicable to its FX margin clients." (*Id.*) On October 1, Kragga, FX3X, and Deutsche Bank executed a Novation Agreement transferring Kragga's positions into the FX3X account. (Dkt. No. 1 ¶ 50.) FX3X began trading that same day, and immediately received near-daily notifications of a collateral shortfall. (*Id.* ¶¶ 52, 56-86.)

On October 22, 2008, Deutsche Bank made a margin call requiring Integra to post about $5 million. (*Id.* ¶ 87.) Scalone protested that the call was erroneous, and he communicated with representatives of Deutsche Bank over the following days as they investigated. (*Id.* ¶¶ 88-95.) Nonetheless, on October 27, Deutsche Bank informed Integra that FX3X needed to liquidate its entire portfolio for failure to satisfy the margin call. (*Id.* ¶ 96.) Over the next two days, FX3X liquidated about 80% of its portfolio, before Deutsche Bank agreed to allow FX3X to retain the remaining 20%. (*Id.* ¶¶ 99-100.) Integra alleges that, due to Deutsche Bank's unlawful conduct, it lost 47% of its assets and the opportunity to take advantage of substantial volatility in the foreign exchange market. (*Id.* ¶¶ 105-07.) It estimates that its total damages exceed $50 million. (*Id.* ¶ 118.)

## II.   Discussion

Integra presses eight claims sounding in contract and tort. New York law governs interpretation of the contract, and the parties implicitly agree that it also governs all tort claims at issue here. (*See, e.g.* Dkt. No. 14 at 9; Dkt. No. 22 at 4; Dkt. No. 15-2 Pt. 4(h).)

Deutsche Bank moves to dismiss each claim under Federal Rule of Civil Procedure 12(b)(6). Pursuant to that rule, dismissal is appropriate when a complaint "fail[s] to state a claim

upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  That standard is met when a

complaint lacks "factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as

true, to state a claim for relief that is plausible on its face." *Cohen v. S.A.C. Trading Corp.*, 711

F.3d 353, 359 (2d Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678).  The court "need not accord

[l]egal conclusions, deductions or opinions couched as factual allegations . . . a presumption of

truthfulness." *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (alteration in

original) (internal quotation marks and citation omitted)).  Ultimately, the allegations "must be

enough to raise a right to relief above the speculative level." *Starr v. Sony BMG Music Entm't*,

592 F.3d 314, 321 (2d Cir. 2010) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555

(2007)).

### A.     Breach of Contract

Integra's primary claim is for breach of the ISDA.  (Dkt. No. 1 ¶¶ 127-35.)  The

Complaint alleges that Deutsche Bank breached paragraph 13(x) of the ISDA CSA.  That

paragraph states:

> ***Changes to Net Open Position.***  [Deutsche Bank] and [FX3X] agree
> that [Deutsche Bank] shall have the right to change the methodology
> used to calculate the Net Open Position at any time.  Such changed
> methodology shall be [Deutsche Bank]'s normal methodology
> applicable to its FX margin clients.  [Deutsche Bank] agrees to
> provide a description of such methodology to [FX3X] upon request.

(Dkt. No. 15-1 ¶ 13(x).)

The Complaint repeatedly alleges that the methodology Deutsche Bank applied to FX3X

was not the normal methodology for foreign exchange clients, but one with critical errors.  (*See,

e.g.*, Dkt. No. 1 ¶¶ 132-34.)  It fails to allege, however, that Deutsche Bank *changed* the

4

methodology.  Instead, the Complaint clearly explains that Deutsche Bank applied the erroneous methodology for the entire existence of FX3X.  The "changed methodology" mentioned occasionally in the Complaint (*id.* ¶ 132) refers to a methodological change in January 2008 for other Integra Investments portfolios—particularly Kragga—before the existence of the September 2008 FX3X contract.  Such a change is not a breach of paragraph 13(x).  And Integra has not alleged breach of any contract provision governing the *initial* setting of the methodology for calculating FX3X's Net Open Position.

Integra replies that FX3X is the successor to Kragga's rights through the Novation Agreement.  That Agreement, Integra argues, gives Integra the right to sue based on the change to the methodology applicable to Kragga.  The Complaint, however, alleges merely that the Novation Agreement transferred "Kragga's portfolio of positions . . . into the newly created FX3X account."  (*Id.* ¶ 50.)  It alleges, then, that certain assets were transferred from Kragga to FX3X, not that any rights or obligations followed with those assets.  And even if it had, Integra does not claim breach of any Kragga-Deutsche Bank agreement to which FX3X is the successor.  There is no point, in other words, where the Complaint identifies a change triggering ¶ 13(x).

### B.   Breach of Oral Contract

In the alternative, Integra claims breach of an oral contract with Deutsche Bank not to enforce a margin call based on the erroneous margin calculation system.  (*Id.* ¶¶ 136-43.)  This claim also fails.

Any argument basing the oral contract on statements made before the parties executed the ISDA and CSA is foreclosed by the ISDA's merger clause.  Such a merger clause "requires dismissal of any claim founded on the earlier alleged oral agreement between the parties."  *BLD Prods., LLC v. Viacom, Inc.*, No. 10–CV-2625, 2011 WL 1327340, at *13 (S.D.N.Y. Mar. 31,

2011) (considering a nearly identical merger clause), *vacated on other grounds sub nom.*, *BLD Prods., LLC v. Remote Prods., Inc.*, 509 F. App'x 81 (2d Cir. 2013); *see also Sengilio v. Valeo Elec. Sys., Inc.*, 328 F. App'x 39, 42 (2d Cir. 2009); *Dujardin v. Liberty Media Corp.*, 359 F. Supp. 2d 337, 356-57 (S.D.N.Y. 2005). The clause here explains that the ISDA "constitutes the entire agreement and understanding of the parties with respect to its subject matter and supersedes all oral communication and prior writings with respect thereto." (Dkt. No. 15-2 ¶ 9(a).) Since the ISDA and CSA explain the circumstances under which Deutsche Bank could enforce a margin call against FX3X, it supersedes any earlier oral contract on the same subject matter. Even absent the merger clause, the oral contract would be invalid as inconsistent with a subsequent written contract concerning the same subject. *See, e.g.*, *Medtech Prods. Inc. v. Ranir*, 596 F. Supp. 2d 778, 793 (S.D.N.Y. 2008).

Integra argues that the statements forming the oral contract persisted after the parties executed the ISDA and CSA, as well as the Kragga Novation Agreement. As discussed above, the Complaint does not allege any oral representations made by Deutsche Bank regarding the Novation Agreement. It similarly includes no alleged oral representation by Deutsche Bank between execution of the agreements and the October margin call that Deutsche Bank would not enforce a margin call. The Complaint simply fails to allege an exchange of promises or other terms of an oral contract. *See Matana v. Merkin*, 989 F. Supp. 2d 313, 319 (S.D.N.Y. 2013); *Fuji Photo Film U.S.A., Inc. v. McNulty*, 669 F. Supp. 2d 405, 412 (S.D.N.Y. 2009).

### C.    Breach of Covenant of Good Faith and Fair Dealing

The Complaint next alleges violations of the covenant of good faith and reasonable commercial standards in Articles 8 and 9 of the New York Uniform Commercial Code. N.Y. U.C.C. §§ 8-102; 8-103; 9-109. (Dkt. No. 1 ¶¶ 144-51.) As Deutsche Bank observes, and

Integra does not dispute, these covenants apply only to transactions governed by Articles 8 and 9, which these are not. *See, e.g.*, *S.E.C. v. Credit Bancorp, Ltd.*, 386 F.3d 438, 447 (2d Cir. 2004) (Article 8); *Royal Palm Senior Inv'rs, LLC v. Carbon Capital II, Inc.*, No.08–CV-4319, 2009 WL 1941862, at *10 (S.D.N.Y. July 7, 2009) (Article 9).

In its brief, Integra argues instead that Deutsche Bank breached New York's general covenant of good faith and fair dealing implied in all contracts. Even if the Complaint included that claim—which it does not—its conclusory allegations of bad faith fail to meet the high bar to state a claim. *See LJL 33rd St. Assocs., LLC v. Pitcairn Props. Inc.*, 725 F.3d 184, 195 (2d Cir. 2013) ("The implied covenant of good faith and fair dealing bars a party from taking actions so directly to impair the value of the contract for another party that it may be assumed that they are inconsistent with the intent of the parties." (internal quotation marks and citation omitted)). Nor may the Court infer a covenant of good faith and fair dealing where the contract "contains an express covenant . . . in respect to the same subject." *RJ Capital, S.A. v. Lexington Capital Funding III, Ltd.*, No. 10-CV-25, 2011 WL 3251554, at *13 (S.D.N.Y. July 28, 2011) (internal quotation marks and citation omitted); *see LJL 33rd St. Assocs.*, 725 F.3d at 195-96. The ISDA and CSA expressly outline Deutsche Bank's responsibilities in determining the Net Open Position and the circumstances under which Deutsche Bank can make a margin call. No implied covenant further limiting Deutsche Bank's freedom to determine the margin calculation system can be found on the same subject. *See RJ Capital*, 2011 WL 3251554, at *13.

### D.      Breach of Fiduciary Duty

Claim Five alleges that Deutsche Bank breached a fiduciary duty to Integra. (Dkt. No. 1 ¶¶ 159-65.) No such duty existed. "A fiduciary relationship exists when one person is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the

relation." *Am. Fed'n of State, Cty. & Mun. Emps. Dist. Council 37 Health & Sec. Plan v. Bristol-Myers Squibb Co.*, 948 F. Supp. 2d 338, 358 (S.D.N.Y. 2013) (Oetken, J.) (internal quotation marks and citation omitted); *see United States v. Smith*, 985 F. Supp. 2d 547, 600 (S.D.N.Y. 2014).  Integra alleges that Deutsche Bank's fiduciary duty arose from its representations not to enforce a margin call against Integra's interests, causing Integra to repose trust in Deutsche Bank.  (Dkt. No. 1 ¶¶ 160-62.)  The Complaint alleges no such representations that pertain to FX3X.  Rather, the ISDA expressly disclaims any fiduciary relationship between the parties.  (Dkt. No. 15-2 Pt. 5(a)(i)(3).)  And in any event, ordinary, arms-length commercial arrangements between sophisticated parties involve the "relation of confidence or trust sufficient" to generate fiduciary relationships only in "extraordinary circumstances."  *In re Mid-Island Hosp., Inc.*, 276 F.3d 123, 130 (2d Cir. 2002) (internal quotation marks and citation omitted).  This case is no different: Integra does not allege that it relied on Deutsche Bank's superior expertise and knowledge about calculating margin calls, but rather bargained for contractual provisions governing the calculation methodology, notwithstanding its disputes over the details of Deutsche Bank's methodology.  *See Sebastian Holdings, Inc. v. Deutsche Bank AG*, 78 A.D.3d 446, 447 (N.Y. App. Div. 1st Dep't 2010) ("Plaintiff's alleged reliance on defendant's superior knowledge and expertise in connection with its foreign exchange trading account ignores the reality that the parties engaged in arm's-length transactions pursuant to contracts between sophisticated business entities that do not give rise to fiduciary duties.").

### E.    Fraud and Constructive Fraud

In Claims Four and Seven, Integra alleges that Deutsche Bank engaged in fraud and constructive fraud.  (Dkt. No. 1 ¶¶ 152-58, 171-75.)  Neither of those claims can survive the motion to dismiss.  To state a claim for fraud in New York, a party must allege "(1) a material

misrepresentation or omission of a fact, (2) knowledge of that fact's falsity, (3) an intent to induce reliance, (4) justifiable reliance by the plaintiff, and (5) damages." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 170 (2d Cir. 2015).  Allegations of fraud are subject to the heightened pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure, which requires Integra to "state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  To state the circumstances with particularity, a plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 197 (2d Cir. 2013) (internal quotation marks and citation omitted).  Integra must also plead sufficient general facts to "give rise to a strong inference of fraudulent intent."  *Loreley*, 797 F.3d at 171 (internal quotation marks and citation omitted).

Integra does not allege fraud with particularity.  The Complaint contains repeated general allegations that Deutsche Bank agreed to refrain from making margin calls using the erroneous methodology.  But it alleges no specific statements involving FX3X that were fraudulent.  *See Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 119 (2d Cir. 2013) ("Bare-bones allegations do not satisfy Rule 9(b).").

Moreover, even if Integra had pleaded with particularity a material misstatement by Deutsche Bank, it would have failed to show justifiable reliance.  "New York courts are generally skeptical of claims of reliance asserted by sophisticated businessmen engaged in major transactions who enjoy access to crucial information but fail to take advantage of that access." *Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 500 F.3d 171, 181 (2d Cir. 2007) (alteration, internal quotation marks, and citation omitted).  Before entering the FX3X ISDA, Integra

complied with one margin call against Kragga, in August 2008, knowing that the margin call was based on the erroneous methodology and notwithstanding Deutsche Bank's prior representations that it would not enforce a margin call.  It then entered into the ISDA, complete with the merger clause and a clause disclaiming reliance on any prior written or oral assurances by Deutsche Bank.  (Dkt. No. 15-2 Pt. 5(a)(i)(1).)  Any reliance on Deutsche Bank's prior misstatements would be unjustified as a matter of law.  *See CDO Plus Master Fund Ltd. v. Wachovia Bank, N.A.*, No. 07–CV-11078, 2009 WL 2033048, at *5 (S.D.N.Y. July 13, 2009).

In its brief, Integra urges that the fraud claim be understood as a claim of fraudulent inducement.  (*See* Dkt. No. 1 ¶ 156.)  For such a claim to operate independently of an alleged breach of contract claim, a plaintiff must "demonstrate a legal duty separate from the duty to perform under the contract," "demonstrate a fraudulent misrepresentation collateral of extraneous to the contract," or "seek special damages that are caused by the misrepresentation and unrecoverable as contract damages.  *U.S. Capital Partners, LLC v. Stanwich Capital Advisors, LLC*, No. 14-CV-4138, 2015 WL 4388421, at *3 (S.D.N.Y. July 17, 2015) (Failla, J.); *see Wall v. CSX Transp., Inc.*, 471 F.3d 410, 416 (2d Cir. 2006) (analyzing a fraudulent inducement claim without a parallel breach of contract claim).  Such a claim cannot be defeated by a blanket merger clause and disclaimer such as those apparently present here.  *See id.* at 416 & n.5.

Nonetheless, Integra has failed to plead fraud in the inducement.  The only proposed separate legal duty for Deutsche Bank is a fiduciary duty, which did not exist.  And, as discussed above, Integra has failed to plead fraudulent misrepresentations with particularity.  To the extent that Deutsche Bank's statements regarding the margin calls could be understood as material misstatements, they were not collateral to the contract.  Rather, they addressed Deutsche Bank's

future actions on "common topics" with the written agreement—namely, the future calculation of Net Open Position and the circumstances under which Deutsche Bank could make a margin call.  *See id.*at 417; *see also U.S. Capital Partners*, 2015 WL 4388421, at *4 (explaining that misrepresentations of present fact are actionable, but misrepresentations of future intent to perform under the contract "merge with the contract claim").

Last, a claim for constructive fraud in New York has the same elements as actual fraud, except that the plaintiff must prove a "fiduciary or confidential relationship between the parties" rather than an intent to induce reliance.  *Wilson v. Dantas*, 746 F.3d 530, 536 n.2 (2d Cir. 2014) (internal quotation marks and citation omitted).  Since the parties are not in a fiduciary relationship, as described above, this claim is also dismissed.

### F.    Promissory Estoppel

Integra next seeks recovery in quasi-contract on a theory of promissory estoppel.  (Dkt. No. 1 ¶¶ 166-70.)  This claim also fails.  Promissory estoppel requires: "1) a clear and unambiguous promise; 2) reasonable and foreseeable reliance on that promise; and 3) injury to the relying party as a result of the reliance."  *Kaye v. Grossman*, 202 F.3d 611, 615 (2d Cir. 2000) (Sotomayor, J.).  Integra alleges that they reasonably relied on Deutsche Bank's clear and unambiguous promises that it would not enforce margin calls generated by the erroneous margin calculation system.  Again, the only promises identified in the Complaint related to Kragga and predated the existence of the contracts.  Deutsche Bank's representations alleged in the Complaint did not even purport to extend beyond Kragga.  (*E.g.* Dkt. No. 1 ¶ 32.)  The Complaint, therefore, does not allege that Deutsche Bank made a promise of sufficient clarity to satisfy the first element of a promissory estoppel claim.  *See, e.g.*, *Washington v. Kellwood Co.*, No. 05–CV-10034, 2009 WL 855652, at *9 (S.D.N.Y. Mar. 24, 2009).

Even had Deutsche Bank made a sufficient promise, a claim for promissory estoppel would fail.  A comprehensive contract covers the margin calculation methodology, the circumstances under which Deutsche Bank can make a margin call, and includes a comprehensive merger clause.  The "existence of a valid and enforceable written contract governing a particular subject matter" forecloses a claim in quasi-contract "for events arising out of the same subject matter."  *SungChang Interfashion Co., Ltd. v. Stone Mountain. Accessories, Inc.*, No. 12–CV-7280, 2013 WL 5366373, at *18 (S.D.N.Y. Sept. 25, 2013) (internal quotation marks and citation omitted); *see Washington*, 2009 WL 855652, at *9; *cf. Sterberg v. Walber 36th St. Assoc.* 187 A.D.2d 225, 228 (N.Y. App. Div. 1st Dep't 1993) (explaining that a plaintiff may proceed in both contract and quasi-contract "where there is a bona fide dispute as to the existence of a contract or where the contract does not cover the dispute in issue").  And even if a claim of promissory estoppel would lie, reliance on promises contrary to a written contract with a merger clause is unreasonable as a matter of law.  *See Kleinberg v. Radian Grp., Inc.*, No. 01–CV-9295, 2002 WL 31422884, at *10-11 (S.D.N.Y. Oct. 29, 2002); *D'Accord Fin. Servs., Inc. v. Metsa-Serla Oy*, No. 98–CV-5847, 1999 WL 58916, at *4 (S.D.N.Y. Feb. 8, 1999).

### G.   Negligent Breach of Contract

In Claim Eight, Integra seeks relief for negligent breach of written and oral contracts.  (Dkt. No. 1 ¶¶ 176-80.)  New York "does not recognize" such a cause of action.  *E.g.*, *Avazpour Networking Servs., Inc. v. Falconstor Software, Inc.*, No. 12-CV-3574, 937 F. Supp. 2d 355, 365 (E.D.N.Y. 2013); *RLI Ins. Co. v. King Sha Grp.*, 598 F. Supp. 2d 438, 444 (S.D.N.Y. 2009).  In their opposition to the motion, Integra argues that it should be permitted to bring a negligence claim, arguing that Deutsche Bank owed it a duty of care as a professional.  *See Sommer v. Fed. Signal Corp.*, 593 N.E.2d 1365, 1369 (N.Y. 1992).  That claim does not appear in the Complaint,

nor has Integra offered any support for the proposition that prime brokers owe a legal duty sounding in tort to their clients.

### H.       Punitive Damages

Finally, Deutsche Bank moves to dismiss the Complaint's demand for punitive damages. Because all of the Complaint's substantive claims are dismissed, the Court need go no further.

## III.   Conclusion

For the foregoing reasons, Deutsche Bank's motion to dismiss is GRANTED, and the Complaint is dismissed.  As Integra has not previously amended its Complaint and some claims are dismissed for failure to allege adequate factual matter, the Court sua sponte grants leave to amend, provided that any amended complaint must be filed within 21 days of the date of this opinion and order.  *See, e.g.*, *Found. Ventures, LLC v. F2G, Ltd.*, No. 08-CV-10066, 2010 WL 3187294, at *11 (S.D.N.Y. Aug. 11, 2010).

The Clerk of Court is directed to close the motion at Docket Number 13.


SO ORDERED.


Dated: March 22, 2016
New York, New York

_____
J. PAUL OETKEN
United States District Judge

13