```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
  INTEGRA FX3X FUND, L.P., and INTEGRA       :
  INVESTMENT MANAGEMENT, L.P.,               :
                                             :
                        Plaintiffs,          :     14-CV-8400 (JPO)
                                             :
              -v-                            :     OPINION AND ORDER
                                             :
  DEUTSCHE BANK, AG,                         :
                                             :
                        Defendant.           :
-----------------------------------------------------------X
```

J. PAUL OETKEN, District Judge:

      Plaintiffs Integra FX3X Fund, L.P., and Integra Investment Management, L.P., (collectively, "Integra") filed this action on October 21, 2014. (Dkt. No. 1.) On March 22, 2016, the Court granted a motion to dismiss filed by Defendant Deutsche Bank, AG, and granted Integra leave to amend. (Dkt. No. 30.) Integra filed its First Amended Complaint (Dkt. No. 32 ("FAC")) on April 13, 2016, and on April 26, 2016, Deutsche Bank again filed a motion to dismiss (Dkt. No. 33). For the reasons that follow, Deutsche Bank's motion is granted.

**I.    Background**

      Familiarity with the facts of this case as set out in the Court's prior opinion is presumed. *Integra FX3X Fund, L.P. v. Deutsche Bank, AG*, No. 14 Civ. 8400, 2016 WL 1169514 (S.D.N.Y. Mar. 22, 2016). For the purposes of this motion, the Court assumes the truth of the facts alleged in the FAC. *See Profeta v. Shandell, Blitz, Blitz, & Ashley, LLP*, No. 15 Civ. 1054, 2015 WL 7288651, at *1 (S.D.N.Y. Nov. 16, 2015) (Oetken, J.).

      The facts of the FAC very closely follow those set out in the initial complaint. In September of 2007, Integra Investment Management, L.P. ("Integra Investment") and Kragga

Corp. ("Kragga," an investment vehicle managed by Integra Investment) entered into an ISDA[1] Master Agreement ("2007 ISDA") and an associated Credit Support Annex ("2007 ISDA CSA") with Deutsche Bank (collectively "2007 Agreement"). (FAC ¶¶ 23-24.) In January 2008, Integra Investment began using Deutsche Bank as its prime broker. (*Id.* ¶ 28.) Shortly thereafter, Deutsche Bank informed Integra Investment that Deutsche Bank was adopting a new margin calculation system. (*Id.* ¶ 29.) Despite Deutsche Bank's representations that this change would not impact the calculation of margin requirements, the new methodology indicated that Kragga had a collateral shortfall. (*Id.* ¶¶ 29, 31.) Deutsche Bank representatives acknowledged that there was an error in the new margin calculation system and informed Integra Investment that Deutsche Bank would not enforce any margin calls resulting from the error. (*Id.* ¶¶ 32, 33.)

In August of 2008, Integra Investment established Integra FX3X Fund, L.P. ("FX3X"). (*Id.* ¶ 46.) FX3X entered into an ISDA Master Agreement ("2008 ISDA") and Credit Support Annex ("2008 ISDA CSA") with Deutsche Bank. (*Id.* ¶ 47.) On October 1, 2008, Kragga, FX3X, and Deutsche Bank entered into a Novation Agreement, which transferred Kragga's portfolio to FX3X, provided that FX3X became the successor of Kragga's rights under the 2007 Agreement, and required Deutsche Bank to assume its obligations and liabilities to Kragga and extend them to FX3X. (*Id.* ¶¶ 49-51.) Through the first few weeks of October, FX3X received frequent notifications from Deutsche Bank informing FX3X of a collateral shortfall. (*Id.* ¶¶ 55-87.) On October 22, 2008, Deutsche Bank made a margin call, stating that in accordance with the CSA, FX3X was under-collateralized by over five million dollars and needed to post that amount to satisfy the margin call. (*Id.* ¶ 88.) Integra communicated to Deutsche bank that the

---

[1] At the time, "ISDA" referred to the International Swap Dealers Association; the organization has since been renamed the International Swaps and Derivatives Association. (FAC ¶ 24 & n.4).

margin call was erroneous, but on October 27, 2008, Deutsche Bank informed FX3X that it had to liquidate its entire portfolio. (*Id.* ¶¶ 92-97.)

**II.    Discussion**

Whereas Integra's initial complaint raised eight claims, the FAC raises only two: breach of the 2007 Agreement and breach of an oral contract.

Deutsche Bank again moves to dismiss each claim under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.[2] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim must be dismissed where the complaint fails to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

**A.    Breach of the 2007 Agreement**

Integra's first claim is for breach of the 2007 ISDA CSA. (Dkt. No. 32 ¶¶ 120-127.) The Complaint alleges that Deutsche Bank breached paragraph 13(x) of the 2007 ISDA CSA by applying a changed margin calculation methodology to FX3X, as successor to Kragga under the Novation Agreement, that was different from the normal methodology applied to its other foreign-exchange ("FX") clients. (*Id.* ¶ 123.) That paragraph provides:

> ***Changes to Net Open Position.*** [Deutsche Bank] and [Kragga] agree that [Deutsche Bank] shall have the right to change the methodology used to calculate the Net Open Position at any time. *Such changed methodology shall be [Deutsche Bank]'s normal methodology applicable to its FX margin clients.* [Deutsche Bank]

---

[2]    Deutsche Bank also argues that Integra's claims are time barred. (Dkt. No. 34 at 9-12.) Because the Court concludes that Integra has failed to state a claim, it need not address whether such claims would have been timely.

>agrees to provide a description of such methodology to [Kragga] upon request.

(Dkt. No. 32-3 at 21 (emphasis added); *see also* Dkt. No. 32-1 at 2 (defining terms).)

The Court previously dismissed Integra's claim for breach of the 2008 Agreement between Deutsche Bank and FX3X, which contains an identical provision to paragraph 13(x) in the 2007 ISDA CSA, concluding that Deutsche Bank had applied the allegedly "erroneous methodology for the entire existence of FX3X" and so it did not constitute a change of methodology in breach of paragraph 13(x). *Integra*, 2016 WL 1169514, at *2. As a result, the Court rejected Integra's argument that that the Novation Agreement gave Integra the right to sue based on the change of methodology applicable to Kragga, as Integra had failed to allege "breach of any Kragga-Deutsche Bank agreement to which FX3X is the successor." *Id.* at *3.

In the FAC, Integra now alleges breach of the 2007 Agreement between Kragga and Deutsche Bank, claiming that FX3X is the successor to Kragga's rights as a result of the Novation Agreement. (FAC ¶¶ 121-127.) But even assuming the 2007 Agreement is operative,[3] Integra fails to plead a breach of paragraph 13(x) of the 2007 ISDA CSA.

Integra's claim fails because it cannot show that the margin-calculation methodology applied to FX3X was not Deutsche Bank's "normal methodology applicable to its FX margin clients," as would be required to plead a breach of paragraph 13(x). (Dkt. No. 32-3 ¶ 13(x).) Integra makes much of the word "normal" in the contract, arguing that this is ambiguous language that ought to be construed against Deutsche Bank. (Dkt. No. 42 at 9 (citing

---

[3] Deutsche Bank argues that the 2007 Agreement between Deutsche Bank and Kragga does not govern FX3X's margin terms; rather, they are governed by the 2008 Agreement between Deutsche Bank and FX3X, under which the Court already found that the initial Complaint failed to state a claim for breach of contract. (Dkt. No. 34 at 13-14.) *See Integra*, 2016 WL 1169514, at *2.

Restatement (Second) of Contracts § 206)).  But placing the term in its proper context makes clear that "normal" is defined by reference to Deutsche Bank's "normal methodology applicable to its FX margin clients."  *See* Restatement (Second) of Contracts § 202 ("A writing is interpreted as a whole . . . .").  Integra nowhere discusses the margin-calculation methodology applied to Deutsche Bank's other FX margin clients.  Even assuming the truth of Integra's allegations that the methodology was malfunctioning with regard to Integra (FAC ¶¶ 96), that Deutsche Bank acknowledged the malfunction (*id.* ¶ 125), and that the methodology was not industry standard (Dkt. 42 at 7), this still does not imply that the methodology was different from that normally applied to Deutsche Bank's other clients.  As a result, Integra has failed to adequately plead a breach of the terms of the 2007 Agreement.

      **B.**    **Breach of Oral Contract**

The Court previously dismissed Integra's claim for breach of oral contract.  *Integra*, 2016 WL 1169514, at *3.  The Court held that any potential oral contract entered into before the execution of the ISDA agreement was foreclosed by that agreement's merger clause, or else would be invalid as inconsistent with a subsequent written contract.  *Id.*  Moreover, the Court found that Integra failed to allege any "oral representation . . . that Deutsche Bank would not enforce a margin call," so as to adequately plead the existence of an oral contract.  *Id.*

Integra has not remedied these defects in the FAC.  To circumvent the timing issue, Integra claims that the oral contract was entered into after all of the written contracts were signed.  (Dkt. No. 42 at 10.)  But the Court already rejected this claim in its prior decision.  *Integra*, 2016 WL 1169514, at *3 (finding that the initial Complaint "include[d] no alleged oral representation by Deutsche Bank between execution of the agreements and the October margin

call that Deutsche Bank would not enforce a margin call"). And Integra did not meaningfully amend its complaint to cure this issue.

Integra still fails to allege the date on which the alleged oral contract was entered into and fails to provide any detail about the nature of the exchanged promises or consideration. Integra merely changed the word "agreed" to "promised" and added that this alleged oral promise happened after the parties entered into the written agreements. (*Compare* Dkt. No. 1 ¶ 137, *with* FAC ¶ 129.) This conclusory pleading is insufficient to support a claim for breach of contract under New York law. *See Matana v. Merkin*, 989 F. Supp. 2d 313, 319 (S.D.N.Y. 2013) (dismissing a complaint for failure to state a claim where it "does not anywhere allege an exchange of promises or other consideration, nor does it allege the date on which the contract was entered"); *Fuji Photo Film U.S.A., Inc. v. McNulty*, 669 F. Supp. 2d 405, 412 (S.D.N.Y. 2009) ("To show that an enforceable contract existed, the claimant must plead facts surrounding the formation of the contract such as the date the parties entered into the contract, the major terms of the contract, the parties to the contract, and that the party to be bound assented to the contract.").

### III.     Conclusion

For the foregoing reasons, Deutsche Bank's motion to dismiss is GRANTED, and the First Amended Complaint is dismissed with prejudice.

The Clerk of Court is directed to close the motion at Docket Number 33 and to close this case.

SO ORDERED.

Dated:  November 29, 2016
        New York, New York

_____
J. PAUL OETKEN
United States District Judge